# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ELIZABETH WOOD, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br>　vs.<br><br>NATIONWIDE CREDIT, INC.,<br><br>　　　　　Defendant. | Case No.: 18-cv-1755<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427., Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Elizabeth Wood ("Wood") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer," as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant Nationwide Credit, Inc. ("Nationwide") is a debt collection agency with its principal offices located at 1000 Abernathy Road, Suite 200, Atlanta, GA 30328

7. Nationwide is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Nationwide is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Nationwide is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

10. On or about November 10, 2017, Chase mailed an account statement to Wood, regarding an alleged debt, allegedly owed to Chase and associated with Wood's Chase credit card account with an account number ending in 4761. A copy of this account statement is attached to this complaint as Exhibit A.

11. Exhibit A contains the following:

| The Past Due amount of $328.00 is included in your Minimum Payment. | Payment Due Date: | 12/07/17 |
| | New Balance: | $1,230.98 |
| | Minimum Payment: | $353.00 |
| | Account number: | ▮▮▮▮4761 |

Exhibit A.

12. Exhibit A states that, as of November 10, 2017, Wood's account ending in 4761 had a "New Balance" of $1,230.98, with a "Past Due amount" of $328.00, a "Minimum Payment" of $353.00 and a "Payment Due Date" of December 7, 2017.

13. Exhibit A, mailed on or about November 10, 2017, states that Wood's account ending in 4761 had been closed.

2

14. On or about December 4, 2017, Nationwide mailed a debt collection letter to Wood regarding an alleged debt, allegedly owed to Chase, and associated with Wood's alleged Chase account with an account number ending in 4761. A copy of this letter is attached to this complaint as Exhibit B.

15. Upon information and belief, the alleged debt referenced in Exhibit B was a personal credit card account and used only for personal, family, or household purposes.

16. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Wood inserted by computer.

17. Upon information and belief, Exhibit B is a form debt collection letter used by Nationwide to attempt to collect alleged debts.

18. Upon information and belief, Exhibit B is the first written communication Wood received from Nationwide regarding the alleged debt referenced in Exhibit B.

19. Exhibit B contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or obtain a copy of a judgment against you and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit B.

20. Exhibit B also contains the following:

> At this time, we are pleased to present the following 2 options to resolve your account:
>
> **Option 1: Pay your Balance in a single payment**
> This option allows you to pay off your Account Balance by making a single payment for **$1,230.98** on or before **01/10/2018**.
>
> **Option 2: Pay a portion of your balance (Settlement - Opportunity to save 70%)**
> Pay 30% of your Account Balance by making a single payment in the amount of **$369.29** on or before **01/10/2018**. After satisfaction of this payment, your account will be reported to the creditor as settled.

3

Exhibit B.

21. Exhibit B states that Wood had two options to "resolve" the account.

22. The first option in Exhibit B is to "pay off your Account Balance by making a single payment for $1,230.98 on or before 01/10/2018."

23. Option 1 leads the unsophisticated consumer to believe that Nationwide, or the creditor, would continue to impose interest and fees on the account if she did not pay the account in full by Jan. 10, 2018.

24. Option 1, which states that the Account Balance of $1,230.98 must be paid "on or before 01/10/2018" implies to the unsophisticated consumer that a payment of $1,230.98 would not resolve the account in full after that date because of the imposition of interest, late fees, or other charges.

25. Third party debt collectors would collect the full balance of any account at any time. The unsophisticated consumer would interpret the imposition of a deadline to mean that the amount of the debt will increase after that deadline.

26. Upon information and belief, when Nationwide sent Exhibit B to Plaintiff, interest was no longer accruing on Wood's account ending in 4761. Nationwide sent two additional letters regarding the same Chase account to Plaintiff on January 20, 2018 and February 10, 2018. Copies of these letters are attached to this complaint as Exhibits C and D. The balance is the same in Exhibits C and D as in Exhibit B, despite the letters being sent months apart.

27. Upon information and belief, as a matter of policy, Chase does not charge post charge-off interest or fees. *See, e.g., McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 518 (E.D. Mich. Aug. 7, 2013), *vacated by McDonald v. Asset Acceptance LLC*, 2016 U.S. Dist. LEXIS 102182 (E.D. Mich. June 23, 2016) ("The agreement between Chase and Asset stated

4

that '[e]ach charged-off Account is enforceable for the full Unpaid Balance' and that the Unpaid Amount did not include post charge-off interest.").

28. Nationwide knows or should know that Chase does not add interest to debts such as Plaintiff's, as Chase did not instruct Nationwide to collect additional interest from Plaintiff or class members.

29. The representation that interest, late fees, or other charges were accruing when they were not is a material false statement. *See Boucher v. Fin. Sys. of Green Bay,* 880 F.3d 362, 367 (7th Cir. 2018) ("a dunning letter is false and misleading if it 'impl[ies] that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass.'") (alterations in original) (quoting *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012)); *see also Ruge v. Delta Outsource Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *6 n.4, *9 n.6 (N.D. Ill. Mar. 13, 2017) (granting summary judgment to plaintiff because debt collection letter mimicking *Miller* safe-harbor language violated FDCPA where the debt collector and creditor had not waived the right to collect interest and fees but did not charge post-charge-off interest or fees as a matter of policy).

30. Moreover, <u>Exhibit B</u> also contains the following:

> **This demand for payment does not eliminate your right to dispute this debt or inquire for more information about this debt.** If you send a written notification to or otherwise notify this office, as described in the previous paragraphs, NCI will (a) cease collection activities until such time as NCI obtains and sends you the verification as described in the above paragraphs and; (b) extend the due date on these offers as long as the account remains referred to NCI by the creditor.

<u>Exhibit B</u>.

31. The statement that "if you send a written notification to *or otherwise notify this office* . . . NCI will (a) cease collection activities . . ." (emphasis added) conflicts with and overshadows the disclosure of the consumer's rights to require the debt collector to verify the

5

debt and provide the name and address of the original creditor. 15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5).

32. The statement that the consumer may "otherwise notify" Nationwide directs consumers to dispute debts by telephone rather than in writing.

33. 15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

34. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4).

35. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

(b) Disputed debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

6

36. A statement that the consumer may dispute the debt by telephone rather than in writing plainly conflicts and overshadows the validation notice because the consumer does not trigger verification rights unless the dispute is communicated in writing. *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections (a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F.Supp.2d 736, 742-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

37. The instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute debts to believe that oral disputes entitle the debtor to the same protections as disputes in writing, when that impression is not true. *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

38. Nationwide's language contradicts, overshadows and confuses the 15 U.S.C. § 1692g notice.

39. Wood was confused and misled by Exhibit B.

40. The unsophisticated consumer would be confused and misled by Exhibit B.

41. Wood had to spend time and money investigating Exhibit B and the consequences of any potential responses to Exhibit B.

### *The FDCPA*

42. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a

8

misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

43. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

44. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(2)(A) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

46. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

47. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

48. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

49. 15 U.S.C. § 1692g states, in part:

50. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

10

> (1)   the amount of the debt;
>
> …
>
> (4)   a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5)    a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> b) Disputed debts
>
> . . .
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

51. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

52. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims

11

under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

### *The WCA*

53. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

54. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

55. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

56. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

57. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

58. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

59. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

60. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

61. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

62. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

13

63. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

64. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

65. The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## COUNT I – FDCPA

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. Exhibit B states the amount and character of the debt in a confusing and misleading manner.

68. Exhibit B states an expiration date by which the balance of the account must be paid in full.

69. By stating an expiration date by which the balance of the account must be paid in full, Exhibit B impliedly threatens the consumer that Nationwide, or the creditor, will impose

14

interest and fees even though Chase had waived its right to interest and late fees and did not intend to impose these fees.

70. In fact, the consumer could pay the balance stated in Exhibit B at any time to resolve the account.

71. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692g(a)(1).

## COUNT II – FDCPA

72. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. The statement that the consumer may "send a written notification to or otherwise notify this office" to trigger verification contradicts and overshadows the disclosure that a consumer must request verification in writing to trigger the requirement that the debt collector provide verification of the debt.

74. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT III – WCA

75. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Exhibit B states an expiration date by which the balance of the account must be paid in full.

77. Exhibit B contains implied false threats that interest and fees are still accruing on the account when Chase had waived its right to interest and late fees and did not intend to collect interest or fees.

78. <u>Exhibit B</u> fails to effectively convey Plaintiff's statutory validation rights.

79. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## **CLASS ALLEGATIONS**

80. Plaintiff brings this action on behalf of a Class:

(a) all natural persons in the State of Wisconsin (b) who were sent an initial collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect a debt owed to Chase, (d) and incurred for personal, family, or household purposes, (e) where the letter was mailed between November 5, 2017 and November 5, 2018, inclusive, (f) and was not returned by the postal service.

81. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

82. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

83. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

84. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

85. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

86. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated: November 5, 2018

**ADEMI & O'REILLY, LLP**

By:     s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com